Our next case this morning is Frey v. Town of Jackson, number 20-8000 and 20-8021. Counsel, you may proceed. I believe it's Ms. Bramlett. You'll start us off. Yes, Your Honor. May it please the court and counsel. My name is Marcy Crank Bramlett. It is my privilege to appear before you today representing Mr. Bill Frey, the plaintiff in the underlying case. I'd like to speak with you for five minutes. I'll cede five minutes to Amakai and then I'll reserve five minutes for rebuttal. We are here following the Rule 12b6 dismissal of Mr. Frey's constitutional claims against a local police officer, the Jackson Airport, the Town of Jackson, Teton County, and the Teton County Sheriff. The pleading requirements of Rule 8, Twombly, and Iqbal govern this de novo review. A 12b6 motion notably does not resolve contests surrounding facts or the merits of claims. Such a motion simply asks whether the plaintiff has alleged facts sufficient to nudge their claims from possible to plausible. This standard and the failure to properly apply it is the overarching problem with the district court's dismissal of Mr. Frey's constitutional claims. Throughout its order of dismissal, the district court fails to identify facts pleaded by Mr. Frey which satisfy the dictates of Twombly. And more concerningly, and directly contrary to Twombly, the district court construes facts in the light most favorable to defendants. Now, there are obvious and practical challenges for any plaintiff pleading civil rights claims from the forum where these particular events occurred. But this case is especially complex and particularly pertaining to entity liability claims. This is not simply an airport. This is an airport governed by a host of federal regulations and policies that is in a national park that is also in Teton County, which is a county in the state of Wyoming. It is administered by an airport board. The board then contracts the local town of Jackson Police Department for the police to assist TSA with security at the airport. The board does this pursuant to the airport's contractual obligations with the common carriers to provide security and screening at the airport. And then any arrestees at the airport are transported back to the town to a joint jail operated by the town and the county, which is administrated by the county and the sheriff's department. So potential parties that Mr. Frey could have identified could have been police officers, TSA agents, the TSA, the United States, the airport board and its members, the airport, the town of Jackson, the town prosecutors, the Teton County, the sheriff's department. And so I hope what the court is seeing is that the problem for this plaintiff and what is perhaps a uniquely nebulous situation is that they're without much information about the legal relationships between these parties to understand those relationships, to understand which parties dictate the policy and customs, which parties have the responsibilities to train and supervise the individuals involved and to enforce policies. Well, Ms. Bramlett, one of the parties that was sued was Officer Carnes. And other than the two First Amendment retaliation claims that were brought against him, the one that was associated with the arrest and the other that was associated with the alleged prolonged detention at the jail, do you contest the dismissal of any other claims against him? So I hope from our brief that the court understands the number and the number of claims brought. We obviously focused our briefing and time before the court on the claims that we best believe represent the strongest claims. But the Fourth Amendment claims do stand alone, especially on the use of force and potentially the prolonging of detention at the jail, unnecessarily. The case law for First Amendment retaliation and Fourth Amendment prolonging of detention following warrantless misdemeanor arrest tends to cross over when we talk about specifically the second factor, the chilling factor of the Nylander test. All right. Well, let me make sure I understand what you what your answer to my question. So are you do you continue to contest the disposition of a Fourth Amendment claim against Officer Carnes? We do. Particularly relating to the unnecessary and unprovoked use of force directly following Mr. Fry's arrest. And then and I but I continue to believe that the First Amendment retaliation claims continue to be Mr. Fry's strongest claims because of the way those are structured. And I further believe those First Amendment retaliation claims serve as the best basis for his municipal and entity claims against various defendants. And I think a good example of that are the jail claims. So if we can, I'd like to move on to some of those claims. The district court dismissed the First Amendment jail retaliation claim. There was clearly a protected activity. Requests for an attorney are enshrined First Amendment speech implicating rights of association and free speech. And what the Deloach, which is the 10th Circuit case, told us is that unlawful intent to retaliate against such speech places those actions beyond qualified immunity. The district court in this case ruled that a three hour detention did not meet the standard or at a minimum, such a violation was not clearly established. I believe the Austin case and the Canoka Ninth Circuit case cited in the Austin case clearly establish these rights. And further, that Mr. Fray alleged particular facts establishing at least a plausibility of entity liability for the town and the county. Now, why why why entity liability? I think you you alleged that there were three officers and that that suggested involvement of the municipality. But that was true in Butler versus Storm and as well that there were three officers in the 10th Circuit said that a single incident is not enough to give rise to an inference of municipal liability. So why? Why? Assuming that there was an individual constitutional violation, is there enough for municipal liability? Thank you for that question, Your Honor. What a case cited in our brief says is that multiple instances are not required at the 12B6 stage, where there is other indicia of probability that municipal liability can be had. Here we allege not just one instance, but we allege a concert of action between multiple officers, not just of one agency, but multiple agencies in a facility that's operated and administered by additionally brazen statements to third parties like Mr. Fray's wife and a third party attorney who called the jail seeking to speak with Mr. Fray. And those statements blatantly said his detention is being prolonged because of his request for an attorney. These statements were echoed in Karn's own report, which was then filed with the case file. And at this point, Your Honors, if there's no direct questions to me, I'll see some time to Amakai. Go ahead, Mr. Redford. Thank you. May it please the court. I'm Jeff Redford on behalf of the amici. The Supreme Court has held that fees for prevailing defendants in 1983 cases must be limited to claims that are fanciful, fantastic or delusional. And I think that this back and forth that the court just had with the appellant's counsel demonstrates that regardless of whether all of these claims have merit, they don't come close to meeting that very high standard. Now, I want to talk about a claim that hasn't been addressed yet, and that's the claim for prospective injunctive relief regarding the airport screening. Now, this is not subject to qualified immunity because it's prospective, regardless of whether it's subject to Los Angeles v. Lyons, which wasn't raised. It's a question of first impression. It's not foreclosed by any case, and it was grounded in the language of Alki and Hartwell, which are the two leading airport cases. As the Supreme Court held in Christian Berg v. EEOC, questions of first impression are not frivolous, so fees can't be awarded, at least on that claim. Now, that doesn't mean that the court can't conclude that the plaintiff read those cases too aggressively, but this is how constitutional litigation works. We, the amici, routinely try to expand existing precedent, and we know that it's not always going to work, but we're also confident that we aren't going to be assessed fees when our efforts fail. Now, the other- Counsel, let me ask you a question about this. First off, and I don't know if you're prepared to answer this, but the counsel, one of the sanctions and fee awards below was against counsel specifically. Are you trying to encompass that in your argument? Well, I think that we're primarily concerned about fees for prevailing defendants under 1988. I think that if you accept all of our arguments, I think that the sanctions has to go away too, but- All right. Fair enough, because I have a question for that too. And so, as I read the fee award, it seemed to me that Judge Frudenthal was trying to be narrowly tailored in her award, that she wasn't suggesting that every argument that Mr. Johnson made below was spurious or frivolous, but that she was limiting her fee award to the failure to get it right on the Menil claim after she gave them a chance. Doesn't she have some discretion in that specific actual situation to give a fee award? So, two answers. First, from Fox v. Vice, we know that fees can only be awarded to prevailing defendants for costs that would not have been incurred but for frivolous claims. So, to the extent that there's an award here for something unrelated to a claim as it's pleaded, the fact that there was a second chance that wasn't properly taken, that's, I think, falls more under sort of general litigation supervision and not under Section 1988. I think the other issue here is that this is really standard practice. When cases are dismissed without prejudice, oftentimes a plaintiff says, well, what can we add here? Well, we can add a little bit of this, we can add a little bit of that, and that's essentially what we've got. And you have to appeal that. You might think that the judge was wrong the first time around, but it doesn't make it suddenly frivolous when you refile it. And this is just standard throughout civil rights litigation. The subsequent amended complaint that only adds a little bit is just an everyday feature and it's not something that is usually leading to sanctions. And the same is true of ensuring that if those claims get revived, you have one operative document. I'd like to turn very quickly to the retaliation claim. This is essentially a garden variety First Amendment retaliation claim where plaintiff says that he was arrested, roughed up, and detained because of what he said to a police officer, not because he did anything illegal. And there's nothing in any of the briefs pointing to any illegal conduct here. The only way that the court was able to dismiss those claims was really by drawing every inference against the plaintiff, and even crediting statements made by the defendant that contradict the complaint. It might be that at trial, they can prove that the complaint is just not accurate, but that's just not the stage of litigation that we're at. So I see that my time's about up. I would just urge the court not to make the Tenth Circuit uniquely hostile to 1983 claims. Some of these issues, qualified immunity and Monell are not subject to Brightline rules, so it's very difficult to know in advance what a court is going to deem sufficient to clear those hurdles. But it's clear that Congress wanted to encourage these kinds of claims, and the decision below represents a significant disincentive to bringing these kinds of cases. Thank you. Thank you, Counsel. We will now turn to Mr. McGill. Thank you, Your Honors. May it please the court. My name is Joshua Kirk McGill. I speak on behalf of all of the appellees except for Officer Carnes and Sheriff Whalen in their individual capacities, which Mr. Naaman with the Wyoming Attorney General will speak for. This case comes before this court in an unusual posture because there were proceedings in court prior to the case arriving at the District Court. That was the proceedings in front of the Town of Jackson Municipal Court, and those proceedings were incorporated explicitly by the plaintiff below, Appellant Here, in his complaint. And we requested as defendants below that the District Court take judicial notice of those proceedings, which the District Court did. So these proceedings don't arrive with the kind of clean record that Iqbal and Twombly normally encompass, where the District Court is simply looking at the four corners of the complaint. Here we had judicial findings made about, for example, whether or not there was probable cause to make the arrest. And the Municipal Court explicitly found, and the District Court took judicial notice of, that there was probable cause to make the arrest. The criminal case against Mr. Frye was ultimately dismissed for want of the officer's jurisdiction, which of course it is well established, for example, in Virginia v. Moore, that that does not render the arrest a violation of the Constitution. It's merely a violation of state law. Once you have probable cause to make an arrest, all of the First Amendment retaliation claims simply go away on their face. There was no pleading of the kind of setup that the court talks about in Nibbas v. Bartlett, where you might have a First Amendment retaliation claim despite probable cause. This does not fit into that. Well, counsel, let me just make sure I understand what you just said. All of the retaliation claims go away. I thought that the probable cause to arrest would go to the retaliation claim based on the arrest, but not the retaliation claim based on the length of time he was kept at the jail. Is that correct? You are correct, Judge Mappes, and I should have added all of the First Amendment claims in the airport as to the airport, so I apologize. You are quite right. That's fine, as long as we're clear as to the claims relating to what happened at the jail, though why wouldn't it be reasonable to draw an inference in favor of Mr. Frye that his Your Honor, the district court below found that the length of the detention was objectively reasonable and therefore constitutional, so if the entirety of the detention was reasonable, then there was no prolonging for there to be a retaliation for. In other words, if the district court found that as a matter of law there was no prolonged detention, then there could not have been any prolonged detention as a result of retaliation. So if I take an action as a public official in retaliation for your exercise of right, if I would have been entitled to do that in the absence of your protected activity, then everything's fair game. I thought that the law was fairly settled, and I didn't even understand your brief to challenge the precept that if jail officials took action that they would otherwise have been constitutionally entitled to take only in react only because of Mr Frye's exercise of protected activity, there was clearly be a First Amendment violation. But you're saying that I'm wrong about that. I might be. No, Your Honor, what I'm saying is that the district court found as a matter of law based on the evidence for the court, which included the municipal court record of the municipal court record, had complete video coverage of every interaction with Mr Frye since the moment he entered the airport to the moment he left the Sheriff's Department, including all of his detentions, all videotaped. The district court found that there was no prolonged detention. In other words, that the record before the court established there was no prolonged detention. If there was no prolonged detention, then there couldn't have been a retaliation by prolonging the detention. Well, isn't that really a pretty solid ground to reverse this adjudication for summary judgment? If a judge is making factual findings, whether it's based on video or not, when there is sworn testimony that one of the officers told Mr Frye's wife that he was kept longer in jail because he had asked for for a lawyer. And if if your defense of the summary judgment is, well, the judge made a factual finding, judges aren't supposed to make factual findings on summary judgment. I think, Your Honor, the issue is that the findings were made in the municipal court, which did have fact finding authority. The district court simply adopted those res judicata. The record of the municipal court is hundreds of pages of factual findings, which ultimately concluded that there was no unconstitutional action taken against Mr Frye under either the Wyoming Constitution or the federal constitution. Mr Frye has not successfully challenged those findings, and the district court simply adopted those as true by taking judicial notice of that record. I think the issue in this case that we're overlooking to a great extent, and I want to circle back to it because it's the core issue of at least of my brief, which is this case is less about what you could construe if you got into the complaint and rebuilt the complaint from the ground up, which is what Judge Fruedenthal attempted to do, and more of the litigation tactics that were taken, including the admission in writing on the record that the court took notice of, that the purpose of this litigation was to be vexatious, was to attack the reputation of the airport, and that the plaintiff below, the appellant here, was doing that regardless of the merits of the claim. Those findings are critical to the level of deference that's given to the district court. Once the case became more about the practice of law before the district court and how this was being litigated and whether or not the district court's orders were being followed, then this became less of the kind of case that this court would be interfering in because it's now less about the merits of the claims, although, again, we think that the court ruled correctly on those, and more about deference to the district court on how the practice of law will be conducted. When two different judges, including Judge Rankin, who previously had no association with the case, looked at the conduct of the litigation and said, this is not appropriate, the way this litigation is being conducted. This is offensive to the district court who has the opportunity to look the litigants in the eye and look at the record. Let me interrupt you, counsel. Are we now in the territory of the sanctions award against counsel and the fee award? Or are you suggesting that counsel's perhaps overly aggressive tactic somehow impacted the way we have to address the merits? Your Honor, I'm suggesting at the point that the first complaint was a classic shotgun pleading, and it got worse every complaint thereafter, that that is grounds for dismissal, regardless of the niceties of trying to go and construe particular paragraphs in particular complaints to see if there's a claim. The 11th Circuit's point in Jackson v. Bank of America, which I think is a very similar case here, is that when we create the environment where we have a 30-page pleading followed by a 50-page pleading, followed by a 104-page pleading, 50 pages of which were exhibits, that is, as the 11th Circuit said, an assault on the judicial system. And therefore, that is grounds for dismissal. Maybe this is just a variation on Judge Carson's question, but it seems to me that, well, first of all, the district court may have imposed attorney fees and sanctions, but the dismissal wasn't based on the grounds for those sanctions. The dismissal was based on the merits, wasn't it, in district court? Yes, Your Honor. All right. And it seems almost as if what you're asking us to do is affirm that dismissal on the alternative ground of these litigation tactics, this litigation tactics argument. Is that what you're doing? Because it seems to me that the appellant has asked us to review the merits determination. Why wouldn't we do that? Your Honor, you are correct. We specifically asked my clients, the airport defendants, specifically asked in our brief that you do affirm on the alternative ground that this was a shotgun pleading process under Jackson, and that this court's shotgun pleading precedents comport with the 11th Circuit's in Jackson, and therefore, you ought to affirm on that alternative ground. In other words, that Judge Fruit and Ball should have never entertained the original complaint because it was a shotgun pleading. You got a 10th Circuit case that has ever done something like that? In our brief, Your Honor, we do run through the cases that comport with Jackson on the idea that shotgun pleadings are disfavored. No, no, no. That's not what I asked. I asked if there's an appeal from a dismissal of a complaint on the merits. Has this court ever affirmed that dismissal on the non-merits ground that the litigation was somehow improper or vexatious? I do not believe this court has an exact court case as a parallel to Jackson, which is why we cite Jackson and ask the court to adopt that as the law of the 10th Circuit. Your Honor, I want to say one last thing, and I'm going to give it over to Mr. Naaman, which is on the issue of the sanctions for the attorneys, I do want to note the jurisdictional issues with that, given that the attorneys did not appeal those sanctions. I understand if you reverse the underlying merits, those would possibly go away, but I do want to highlight that issue because that was not properly appealed in this case. With that, I turn my time over to Mr. Naaman with the court's consent. Mr. Naaman? May it please the court, as Mr. McGill mentioned, I represent Officer Carnes in his individual capacity. The only issues before this court with regards to Officer Carnes are the two First Amendment retaliation claims because those are the only two that Mr. Frey briefed. Under this court's precedent, all other claims by not being raised in the opening brief are waived. I'll go straight to the jail claim. The dispositive issue is whether there is precedent putting Officer Carnes on notice that by briefly extending Mr. Frey's time at the jail, when the time there was only three hours, and by Mr. Frey's, and was extended in part by Mr. Frey's being uncooperative in the booking process, whether he was on notice that those actions would deter a reasonable person from exercising their constitutional rights, which is the second prong of a First Amendment retaliation claim, and the answer is no. Austin v. Hamilton is not dispositive here for a couple reasons. One, let's assume for the sake of argument that there are no on-point cases. We know from A.N. v. Ponder. We know from Hope v. Pelzer. We know from Brown v. Flowers that we don't necessarily need an on-point precedent if it would be obvious with clarity to an officer that doing something would be unconstitutional. For the second element of a retaliation claim, why isn't it plainly obvious to any officer that if you increase a person's length of incarceration for any period up to, not to exceed, three hours, say it's ten minutes, in because of a person's exercise of protected activity asking for a lawyer, why wouldn't it be obvious that a person of ordinary firmness, I think of myself that way, would be deterred from exercising that? If that were me, I wouldn't be threatening a lawsuit anymore because I'd want to get out of jail as quickly as possible. Your Honor, it wouldn't be obvious based on past precedent. Let me rephrase. I'm aware that the idea behind it in every case is that you don't need past precedent for it. But past precedent from the Supreme Court has made clear that the type of obvious you need, like Hope v. Pelzer, is tying someone to a hitching post. Or like the recent case, Taylor v. Riojas, from the Supreme Court, leaving someone in a disgusting cell is to put an officer on notice that what they did was so drastic, they don't need case law. Because a time in jail, you're going to spend on average several hours anyway, considering this was only three hours and that Mr. Fry extended this by his own actions, by not being cooperative during the booking process, this is not the type of case that is- Where in the complaint did Mr. Fry allege that he was that Officer Carnes said that he was kept in there, at least in part because of his own actions? But aren't we to construe the allegations of the complaint in anything incorporated in the light most favorable to the plaintiff? Respectfully, not in this case, Your Honor, and I'll explain why. First of all, in my motion to dismiss before the district court, I relied on attachment to the complaint, which is under Rule 10c, is part of the complaint for all purposes. Mr. Fry did not contest the fact that we relied on these facts below. In fact, he cited those same facts in his response brief. And now on the first time in appeal, he tries to challenge the fact that the district court used those facts which we used. And under this court's precedent, Richardson v. Ernest group, the plain error standard of review would apply to Mr. Fry's attempt to challenge the district court's use of those facts. And Mr. Fry did not argue for plain error in his brief, and therefore that his contention of that issue is waived. Even if this court were to apply the plain error standard of review, given Federal Rule 10c and the precedent that I cited in my brief, the district court did not commit plain error by relying on Officer Carnes' statements when making those factual determinations. If there are no further questions for this panel, I ask this court to affirm the judgment against Officer Carnes and Sheriff Whalen in all respects. Thank you. Further questions? Thank you, counsel, for the arguments this morning. The case will be submitted and counsel are excused. All right, well, welcome back, everyone. I understand that, well, we have Ms. Bramlett, we have Mr. McGill. I understand Mr. Naiman is listening via phone. Mr. Redfern for the amicus is not with us. He's in transit. But we understand that we owe Ms. Bramlett some additional time. And so we're happy to do that. And let's turn to your remaining argument. I'm incredibly grateful to the court and all counsel for your courtesies in returning to reconvene. So thank you so much. Just a few comments in response to Apolli's arguments. I first want to just express our stringent disagreement with the characterization of the record on the attorney's fees and sanctions. And I would just invite the court to draw its own conclusions about that record. And as the court's questions indicate it's hesitant to do, I would urge the court not to conflate the merits of these claims with the negotiation tactics or the fees and sanctions issues. There was also a mention of the quote shotgun pleading issue. And I think it's important for all plaintiffs and courts to understand that with the requirements of guiding our pleading at the outset of a case, lengthy pleadings and exhibits are becoming more the rule now than the exception. And plaintiffs are seeking to clear those hurdles at the front end because of those stringent requirements and enhanced rules of pleading. I also just want to return the court's focus before we all depart today to the dictates of Rural 8 and Twombly. And I would encourage the court to evaluate the four corners of these complaints. I think the focus by the Apolli's on a municipal court somehow filing of an affidavit of probable cause does in no way bind a federal court on a holding of probable cause. And I think to suggest that the court should embrace that holding or to support that it that's in fact what it did is error. And in fact the district court in this case came to two very important and erroneous factual conclusions both so that would be number one on the probable cause for the arrest and number two on the reasonableness of the of the detention. I think case law and the 10th circuit clearly indicates that those are both matters for a jury. And the district court's findings run directly counter to very clear factual allegations of Mr. Fry's complaint. I believe that the complaint should drive the court's decision in this matter and we would request that the district court be reversed on all counts. Okay thank you counsel. Are there any questions from the panel for Ms. Brown? No thanks. Thank you and thanks to all of you too for reconvening and thanks to the work of the clerk's office to put this together. I'm glad we were able to provide to you the time that you had. We'll now consider the case submitted and counsel at this point truly are excused.